Carr, J.
If the transaction between Lunsford and Bird had been, what the bill of sale purports, an absolute sale of slaves, the question would fairly have arisen, whether the fact of the slave in question being at the time a runaway, excused the actual delivery, and whether the subsequent assertion of his right by Bird, and the other facts found, cleared him of the imputation of fraud ? It was contended, that a court of law must take this as a bill of sale; and Robinson v. M’Donnell was cited in support of the po *271 sition; but to my mind, it does not support it. There, Bell §• Clarkson executed a bill of sale for two ships to the Sharps: they retained possession, and acted as owners : the Sharps became bankrupts, and their assignee took possession of one of the ships: at a subsequent time, Bell Clarkson became bankrupts, and their assignees brought trover for the ship. At the trial, it was proved, that the real consideration of the bill of sale was, that the Sharps should accept Bell &p Clarkson’s bills to the amount of £ 12,000. and that the ships were to be a security for their advances upon such acceptances, but were to remain with Bell Clarkson, until they made default in providing for the acceptances ; which they had not done, when the bankruptcy of the Sharps happened, and their assignees took possession of the ship. The plaintiffs were nonsuited at nisi prius, and a rule was moved for at bar, to enter a judgement for them; which, on argument, was refused. Chief justice Abbot said—“ I think that it was not competent for Bell Clark-son to avail themselves of the parol agreement, in contradiction to their own deed. The bill of sale might be void upon the statute of Elizabeth, as against creditors, but not as against the parties who executed it; and their assignees are in this respect, in no better situation.” It will be remarked, that the point of the decision was, that a party shall not avail himself of a parol agreement, in contradiction of his own deed; and so far from deciding that a court of law could not, at the instance of any one, receive such evidence, the court decided in effect, that it might; for the chief justice added, that the bill of sale, though good between the parties, might have been void as against creditors; which could only be by their shewing the facts, and disclosing the true nature of the deed. In the case before us, it is not Lunsford the grantor, who seeks to shew, that the bill of sale is in truth a mortgage, but a subsequent purchaser without notice from Lunsford; and as our statute enacts that as to all such purchasers, mortgages shall take effect and be valid, from the time they are proved or acknowledged, and *272 delivered to the clerk to be recorded, and from that time . only, it would seem to follow, that, in whatever court such purchaser is impleaded, he may avail himself of all proper evidence to prove, that the deed, however absolute on its face, is in truth a mortgage ; and therefore of no validity as to him, because unrecorded : and then it would devolve on the other party, to prove notice upon him. The evidence then being admissible, the question is, do facts found in the special verdict, prove this a mortgage ? And that indeed is no question; for it is found, in so many words, that “ it was intended to have the effect of a mortgage or deed of trustand whether the one or the other, we know that the effect, in respect to the recording, and subsequent purchasers, is precisely the same.
I do not think it necessary to notice any' other point. This is an action of detinue for a slave brought by a mortgagee on an unrecorded mortgage, against a subsequent purchaser for a valuable consideration without notice—and the judgement is for the defendant. 1 think it must be affirmed.
Cabell, J. As the deed from Lunsford to Bird, although absolute on its face, was intended by the parties, at the time of its execution, to operate only as a mortgage or deed of trust, I am of opinion, that, not having been recorded according to law, it is void as to subsequent purchasers without notice. On this ground, without considering any other, I think the judgement is right and ought to be affirmed.
Brooke, J. It is the admitted principle of the common law, that the title to personal property passes by the actual delivery, or by a constructive delivery of it, as in the ease of Pleasants v. Pendleton, 6 Rand. 473. and many like cases. Mortgages and deeds of trust of personal property, which are directed by statute to be recorded, (by which the title passes without actual delivery), do not impair this principle of the common law. A bill of sale of personal pro *273 perty absolute on its face, is not within the statute, and need r , , . ......... not be recorded to give any greater validity to it; and if recorded, it does not affect this common law principle. The possession of the property must accompany it, to make it a valid transfer of the title; unless, indeed, there are unavoidable circumstances (such as in the case of the transfer of a ship at sea) shewing that delivery was impracticable at the time, and that such circumstances made no part of the contract ; for, otherwise, if the circumstances which prevented the delivery, made a part of the contract, they ought to be stated on the face of the bill of sale, and it ought to be recorded, in order to give it validity. As regards creditors and subsequent purchasers, where that is not done, the sale or transfer is fraudulent per se; that is, it is prima facie evidence of fraud, which is conclusive until evidence to explain it is introduced ; (see my opinion in Land v. Jeffries). But, in the case before us, it appears by the special verdict, that it was not the intention of the owner, Lunsford, to deliver the slave in question to the appellant, though it is found that he was a runaway at the time, but to transfer to him the title of this and two other slaves, as a security for the due application of 1300 dollars, to be laid out in the purchase of other slaves for the appellant. This was one of those secret trusts, which the statute requiring mortgages and deeds of trust to be recorded, intended to inhibit, as to creditors and subsequent purchasers. Therefore, the second bill of sale to Johnson, under whom the appellee claims the same slave, accompanied by delivery of the possession, must prevail, notice to Johnson of the previous bill of sale to Bird, being negatived by the finding of the jury. As to the question raised at the bar, whether evidence of the secret trust was proper at law, there can be no doubt. The bill of sale is only evidence of the title; as to third persons, it does not pass the title of itself, as in the case of a deed recorded for that purpose, in which case, resort is had to a court of equity to remove the deed out of the way of proceedings at law. But its validity may be questioned, by creditors or subse *274 quent purchasers, at law as well as in equity. Stratton v. Minnis, 2 Munf. 329. The judgement must be affirmed.
Tucker, P. This is, I think, a very clear case against the appellant. The special verdict finds, that the deed under which the plaintiff claims, which is absolute upon its face, was intended and received as a conditional conveyance ; that was intended only to secure the payment of the sum of money specified therein. It was, therefore, in fact, nothing but a mortgage. Now, if it had been a mortgage on its face, it would have been void as to the subsequent purchaser, because it had not been recorded. So far as that purchaser is concerned, it would never have taken effect at all; because mortgages “ take effect as to subsequent purchasers from the delivery to the clerk to be recorded, and from that time only.” Can it be then, that the falsehood of the conveyance, places the plaintiff in a better situation, than if the deed had been draughted according to the truth of the case? Can it be that even a fair deed would be considered void, because it is hidden from the eyes of purchasers, and that this deed is good, which, even when seen, hides in impenetrable secrecy from every eye, except those of the parties concerned in the transaction, its real character? I cannot think it. Every well received maxim must be overturned before it can be so: Suppression must become a merit, and falsehood a virtue; and a guilty party must be permitted to take advantage of his own wrong. So far from the absolute form of the deed making the appellant’s case better, it stamps it in my judgement with stronger features of fraud, as respects purchasers and creditors. Independently of express adjudications upon the subject, it is but a corrollary from the principles established in Twine’s case. It is a transaction calculated to work a double fraud ; to deceive a double set of creditors and purchasers; creditors and purchasers both of the grantor and grantee. To those of Bird, he is held out as the absolute owner of the slave; and when a .creditor seeks to charge it, or a purchaser acquires it, this *275 secret defeasance is brought forward to defeat them. To the creditors of Lunsford, on the other hand, the property is held out as the absolute property of Bird, while there is a secret trust between the parties, covering the equity of redemption of Lunsford in the mortgaged subject. What transaction can be more directly fraudulent? If I convey my estate to another, without any consideration, upon a secret trust for my benefit, the deed is indelibly stamped with fraud, in all contests with my creditors : Because my grantee covers my property from them. If they confide in the good faith of the transaction, they are led to suppose, that that property is not chargeable with their debt. And if this be so, where there is no consideration, how does it differ where there is a false consideration ? where there is an equity of redemption, which the creditor would have a right to subject to his demand, which, by the falsehood of the deed, is hidden from his view ?
The authorities, I think, very strongly sustain this view of the case; but it is unnecessary to examine them.
Judgement affirmed.